# Hayes v. Village of Dwight.

1. *Watercourses.—Pollution of—Nuisances.*—The pollution of water in a stream, so as to render it unfit for domestic use or for the watering of stock, is a sufficient ground for equitable interference.

2. *Nuisances—Pollution of Streams—Cities and Villages.*—An incorporated city or village has no more right than an individual, to render corrupt and unwholesome, a stream of water. Its duty to prevent a nuisance to its citizens by taking care of its sewage, gives it no right to create one, as to others, by the pollution of a stream in which the latter have rights.

3. *Injunctions—Watercourses—Owner of Lands upon a Stream.*—An owner of land upon a stream below a village, and into which the village attempts to discharge its sewers, is entitled to an injunction against irreparable injury by the outflow of sewage, and this is so, even where the stream in question is not a constantly flowing stream.

4. *Nuisances—Statutory Definition—Running Streams.*—To corrupt or render impure the water of any spring, river, stream, pond or lake to the injury or prejudice of others, is declared to be a nuisance by section 221 of chapter 38, R. S. Ill. There is no such limit as that of a constantly running stream.

5. *Nuisances—Chancery Jurisdiction—Trials at Law.*—The rule that before a court of equity will grant preventive relief against a threatened

nuisance, the question of whether the thing is a nuisance must first be determined by a jury at law, or in special cases by a jury in an issue directed out of chancery, applies to cases only in which the thing threatened is not necessarily a nuisance, and not to cases where the thing threatened is a nuisance *per se*, or where its contemplated use will necessarily make it a nuisance.

6. *Estoppel—Easements Created by Deed or Prescription.*—The owner of land upon a stream below a village, when the citizens were agitating the question of sewage at a public meeting, was called upon for a speech and was represented as stating that he was willing that the sewage should be discharged into the stream provided a sufficient flow of water was had to keep the sewage moving. When applied to for a deed giving the village the right, he refused. *It was held*, that his alleged consent was simply an oral license, revocable at any time. The right was in the nature of an easement, which can not exist except by deed or prescription.

Memorandum.—Injunction to restrain a nuisance. Appeal from the Circuit Court of Livingston County; the Hon. CHARLES R. STARR, Judge. presiding. Heard in this court at the May term, A. D. 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, REEVES & BOYS, ATTORNEYS.

The pollution of streams by municipalities and public bodies in charge of sewage and drainage, has occasioned frequent exercise of the preventive powers of equity. Upon principle a public body has no more right at common law than a private person. Its duty to prevent public nuisances by taking care of the sewage or drainage of a district gives it no right to create another nuisance by the pollution of a stream. Any pollution of a stream by a public body, in taking care of sewage, is therefore a nuisance unless expressly authorized, and is liable to injunction. Gould on Waters, Secs. 544, 545, 546; Wood on Nuisances, Secs. 683, 684, 685, 686, 689; Attorney-General v. Leeds, 5 L. R. Ch. App. 589; High on Injunctions, Sec. 810; Merrifield v. Lombard, 13 Allen 16; Wahle v. Reinbach, 76 Ill. 322.

The power of a court of chancery to restrain a threatened nuisance has been clearly and positively affirmed by

our Supreme Court, in the following cases, to-wit: Dun-
ning v. Aurora, 40 Ill. 481; Bliss v. Kennedy, 43 Ill. 69;
Lake View v. Letz, 44 Ill. 81; Hotz v. Hoyt, 135 Ill. 388.

Upon the question of consent, if it is the claim of de-
fendant that complainant consented to allow the defendant
to run a drain or sewer across his premises, or to permit it,
this right would be an easement upon the land of complain-
ant. And an easement can not be obtained except by deed
or prescription. An oral license is revocable at any time.
And in support of this we cite the following cases: Wise-
men v. Lucksinger, 84 N. Y. 31; Olmsted v. Dennis, 77 N.
Y. 378; Wolfe v. Frost, 4 Sandf. Ch. (N. Y.) 72; Cook v.
Streans, 11 Mass. 533; Stevens v. Stevens, 11 Met. 251; Ex
Parte Coburn, 1 Cow. 568; Munford v. Whitney, 15 Wend.
384; Post v. Pearsall, 22 Wend. 425; Banks v. Am. Tract So., 4
Sandf. Ch. (N. Y.) 438; Forbes v. Bolenseifer, 74 Ill. 183;
Morse v. Copeland, 2 Gray 302; Robinson v. Thrailkill, 110
Ind. 117; Thompson v. Gregory, 4 Johns. 81; Cobb v.
Hampshire, 18 Pick. 340; Miller v. A. & S. Ry Co., 6 Hill
61; Kamphouse v. Gaffner, 73 Ill. 453; Tanner v. Volentine,
75 Ill. 624; St. Louis Stockyards Co. v. Wiggins Ferry Co.,
112 Ill. 384; Simpson v. Commissioners, etc., 21 Ill. App.
67; Murray v. Gibson et al., 21 Ill. App. 488; Stoddard v.
Filgur et al., 21 Ill. App. 560; Deyo v. Ferris, 22 Ill. App.
154; Totel v. Bonnefoy et al., 23 Ill. App. 55.

APPELLEE'S BRIEF, R. S. McILDUFF AND GEO. W. PATTON,
ATTORNEYS.

"The question as to what is a nuisance is one peculiarly
fitted for the investigation of a jury, and in an ordinary case,
where the event of a suit in equity depends upon a legal
right, the right must be ascertained in an action at law,
before any relief can be granted in a court of equity."
2 Story's Eq. Juris., Sec. 925b.

"The cases to be found in the reports illustrative of the
rules above stated are very numerous. Reference is made to
the following: Eastman v. Company, 47 N. H. 71; Attor-
ney-General v. Heishon, 18 N. J. Eq. 410; Shields v. Arndt,

4 Id. 234; Hackensack Improvement Commission v. New Jersey Midland Ry. Co., 22 Id. 94; Wolcott v. Melick, 11 Id. 204; Goodall v. Crofton, 33 Ohio St. 271; Kennerty v. Etiwan Phosphate Co., 17 S. C. 411; Clack v. White, 2 Swan 540; Fisk v. Wilber, 7 Barb. 395; White v. Forbes, Walker, (Mich.) 112; Hacke's Appeal, 101 Pa. St. 245; Washburn on Easements, (3d ed.) 700; Adams' Equity, 311.

When assent has been given to one by another to do an act, the natural and probable consequences of which are to produce a certain result, and the person to whom the assent is given goes on and expends money on the strength of the · assent, and makes erections of a permanent character, while the consent does not give any interest in the land, and at law is revocable at any time, yet a court of equity will enforce it as an agreement to give the right, in a case of fraud or great hardship, or will generally enjoin a party from revoking it. Wood's Law of Nuisances, 2d Ed., p. 380, Sec. 360; Cook v. Pridgen, 45 Ga. 331.

Even if the assent or license involves the creation of an easement, yet if heavy sums of money have been expended on the faith of it, equity will not aid the licensor in consummating the fraud, but if invoked will decree a valid title. Houston v. Laffe, 46 N. H. 508; McKellip v. McIlhenny, 4 Watts, 317; 2 Eq. Cases Ab. 523.

" In cases where the revocation would be a fraud, courts of equity give a remedy, either by restraining the revocation or by construing the license as an agreement to give the right and compelling a specific performance." Veghte et al. v. The Raritan Water Power Co., 19 N. J. Eq. 142; Brown v. Brown, 30 N. Y. 544.

Where great expense has been incurred on the faith of a parol license, such license operates as an equitable estoppel. Bridge Co. v. Bragg, 11 N. R. 102; Lefevre v. Lefevre, 4 S. & R. (Penn.) 241; Ricker v. Kelly, 1 Greenl. (Me.) 117; Hepburn v. McDowell, 17 S. & R. (Penn.) 383.

OPINION OF THE COURT, HARKER, P. J.

In the summer of 1892, the village of Dwight began the

construction of a system of sewers, planning said system so that the discharge of the sewage from the village would be into Gooseberry creek, a stream passing through the village and running in a northerly direction through the farm of appellant.

Appellant filed his bill to restrain the village from discharging its sewage into the creek, alleging that the creek was a running stream of living water, pure and good for stock; that he was using his farm as a stock farm; that he relied upon the waters of the creek for his stock; that he cut ice from the creek and stored it for the use of his family; that the discharge of the sewage into the creek above as contemplated by the village, would render the water unfit for use and would cause noxious odors to spread over his farm and place of residence, rendering the same unhealthful, and would cause to him irreparable injury. A temporary injunction was granted by the master in chancery as prayed for, and at the January term, 1893, of the Circuit Court, appellee having answered denying all the material allegations in the bill, a hearing was had resulting in a dissolution of the injunction and a dismissal of the bill.

The evidence shows that Dwight is a village of about 1,600 inhabitants; that appellant owns a stock farm of 212 acres about one mile north of the village, on which he has resided for several years, and that the stream into which the village proposes to empty its sewage flows through his farm for the distance of three-fourths of a mile, and is used by him for watering his stock and harvesting ice for domestic purposes. A large number of witnesses were examined as to the effect which a discharge of the sewage into the stream would have upon the water and there was some diversity of opinion among them. We do not care to discuss their testimony in detail but will say that the decided preponderance shows that the discharge of the village sewage as contemplated would pollute the water and render it unfit for use on appellant's farm. We are satisfied, also, from the evidence, that the sewage running through the

stream, would fill the air about the premises and residence of appellant with unpleasant and unhealthful odors to such an extent as to render it a nuisance.

The pollution of water in a stream so as to render it unfit for domestic use or for the drink of stock by one who has the right to use it, is a sufficient ground for equitable interference. An incorporated city or village has no more right than an individual to render corrupt and unwholesome such water. Its duty to prevent a nuisance to its citizens by taking care of its sewage gives it no right to create to others a nuisance by the pollution of a stream in which the latter have rights.

An owner of land upon a stream like the one in question, below a village, is entitled to an injunction against irreparable injury by the outflow of sewage. Gould on Waters, Secs. 544, 545, 546; Wood on Nuisances, Secs. 683, 684, 685. High on Injunctions, Sec. 810.

In our opinion it does not militate against appellant's right to an injunction that Gooseberry creek is not a constantly running stream. The evidence shows that it is a running stream except in times of very dry weather, and that in those times sufficient water is left in pools and low places to water his stock. To our minds it appears that the nuisance would be greater with such a stream than it would be with a stream of a constant and never failing flow, because the sewage which had accumulated, would be left upon the premises instead of being washed away.

To corrupt or render impure the water of any spring, river, stream, pond or lake to the injury or prejudice of others, is declared a nuisance by our statute. 1 Starr & Curtis' Statutes, 815. There is no such limit as that of a constantly running stream.

It is contended by appellee that before appellant is entitled to an injunction, it must first be determined by a jury in a court of law that the emptying of the sewage into the creek constitutes a nuisance. Such, doubtless, was the view taken by the trial court, as the bill was dismissed "without prejudice to complainant's right at law." A long list of

authorities are cited, the most of them Illinois cases, in which the rule is laid down, that before a court of equity will grant preventive relief against a threatened nuisance, the question of whether the thing is a nuisance must first be determined by a jury at law, or in special cases by a jury on an issue directed out of chancery. The Illinois cases must be considered as referring to cases only in which the thing threatened is not necessarily a nuisance. As we read those cases, we do not understand our Supreme Court to hold a trial by jury to determine the question of nuisance necessary where the thing threatened is a nuisance *per se,* or where its contemplated use will necessarily make it a nuisance. In the case of Wahle v. Reinbeck, 76 Ill. 322, a case where the complainant sought to enjoin his neighbor from erecting a privy so close to his house and well that it would become injurious to the health and comfort of his family, this exact question was considered. The Supreme Court, after holding that the erection and use of the structure contemplated would be a nuisance *per se,* use the following language: "To say that such a nuisance must be suffered to be created and continued until its character shall be formally determined at law, would seem to be little better than a mockery of justice to him whose residence is affected thereby." This court has held that a privy so constructed as to contaminate the water of a well used for domestic purposes or which is allowed to remain in such a condition that persons dwelling near it are rendered uncomfortable by the escape of noxious smells and filthy matter, is a nuisance *per se,* and if the facts are clearly shown, it will, by a court of equity, be abated without a preliminary determination of the facts by a jury. Iliff v. School Directors, 45 Ill. App. 419.

A discharge of the product of the water closets of the village of Dwight into Gooseberry creek, and thence upon and through the premises of appellant by means of that stream would be a nuisance *per se,* and it is not such a case as requires the preliminary determination of a jury.

Appellee also contends that appellant is estopped from the

relief sought, because of consent on his part to carry the sewage of the village through his farm by means of Gooseberry creek. It appears from the evidence that at a public meeting of the citizens of Dwight called to consider the feasibility of a sewer system, appellant was called upon for a speech in which he stated the manner of constructing sewers by special assessment, and is represented by some of the witnesses as saying that he was willing for the sewage to be discharged into Gooseberry creek, provided a sufficient flow of water was had to keep the sewage moving. Appellant explains that he had no reference to a general discharge of the village sewage, but only to such as would be discharged from the Keeley Institute, and that whatever was said at that time by him, or at any other time relative to his consent, was limited entirely to sewage from that institution.

When applied to for a deed giving the village the right, appellant refused. The village authorities did not regard appellant as having consented. The most that can be said of appellant's alleged consent is that it was simply an oral license revocable at any time. It was in the nature of an easement which can not exist, except by deed or prescription. Angell on Water Courses, Sec. 168; Washburn on Easements, 267; Bullen v. Runnels, 2 N. H. 255; Hall v. Ionia, 38 Mich. 493.

We do not regard the alleged errors of the refusal of the court to allow the bill to be amended as very material. Complainant was entitled to the relief sought, and there was not a sufficient variance between the allegations in the bill and proofs with reference to the character of the stream to require an amendment.

The decree is reversed and the cause remanded with directions to the Circuit Court to make the injunction perpetual. Reversed and remanded with directions.